UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| WDCD, LLC, A HAWAII LIMITED LIABILITY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>iSTAR, INC., A MARYLAND CORPORATION,<br><br>Defendant. | CIV. NO. 17-00301 DKW-RLP<br><br>**ORDER GRANTING iSTAR INC.'S MOTION TO STAY LITIGATION UNDER 9 U.S.C. § 3 OR, IN THE ALTERNATIVE, TO DISMISS UNDER RULES 8, 12(b)(6), AND 12(b)(7)** |

Before the Court is Defendant iStar, Inc.'s Motion to Stay Litigation Under 9 U.S.C. § 3 or, in the Alternative, to Dismiss Under Rules 8, 12(b)(6) and 12(b)(7), filed August 1, 2017 (*see* ECF No. 13). For the reasons set forth below, the Motion to Stay is GRANTED.

## BACKGROUND

On April 4, 2012, SFI Ilikai Retail Owner LLC, SFI Ilikai Property Owner LLC, and SFI Ilikai 104 LLC (collectively "SFI Parties"), as owners, and WDCD, LLC, as consultant, executed a Development Consultant Agreement ("Agreement"; Dookchitra Decl., Ex. A, ECF No. 13-1) in connection with the redevelopment and potential sale of the Ilikai property in Waikiki. Mot. to Stay 1,

ECF No. 13 at 6. The Agreement contains an arbitration provision requiring that any controversy "arising out of or relating to this Agreement or its breach, [] be submitted to arbitration." Mot. to Stay 1, 6 (citing Dookchitra Decl., Ex. A [Agreement] § 7.14).

On November 1, 2016, WDCD advised iStar, the SFI Parties' parent company, of additional commissions that WDCD claimed it was owed under the Agreement. Dorsey Decl. ¶¶ 2, 3, ECF No. 24-1. WDCD asserts that although it requested that iStar arbitrate these commissions claims pursuant to the Agreement, iStar refused:

> I asked Mr. Dorsey [iStar's counsel] whether iStar Inc. was subject to arbitration under the terms of the Development Agreement. Mr. Dorsey replied that iStar had not signed the Development Agreement and therefore could not be compelled to arbitrate with WDCD. I asked Mr. Dorsey if iStar would nevertheless agree to arbitrate WDCD's claims against it and, consistent with my understanding of iStar['s] Motion to Stay, he replied that iStar would not and that WDCD could only arbitrate against SFI Parties.

Sullivan Decl. ¶ 5, ECF No. 22-1. Accordingly, WDCD filed the instant action. Sullivan Decl. ¶ 6.

iStar claims to have never refused to arbitrate. Indeed, iStar filed the instant motion on August 1, 2017, asking the Court to stay the lawsuit "pursuant to Section 3 of the Federal Arbitration Act in favor of arbitration" because each of WDCD's claims arises out of the underlying Agreement. Mot. to Stay 2.

2

Additionally, on September 19, 2017, iStar filed an Arbitration Demand and Statement of Claims against WDCD with Dispute Prevention & Resolution Inc. ("DPR"), seeking adjudication of all rights arising out of or relating to the Agreement, including those raised by WDCD against iStar in the instant lawsuit. *See* Dorsey Decl., Ex. B [Arbitration Demand], ECF No. 24-3.

On October 13, 2017, the Court issued an order granting iStar's Motion to Stay this litigation in favor of the DPR arbitration that iStar had noticed on September 19, 2017. ECF No. 27. On November 14, 2017, before the Court could set forth its reasoning for doing so, the parties jointly filed a Notice of Agreement to Arbitrate. ECF No. 30. Notwithstanding this Notice, the Court offers the following explanation for its October 13, 2017 decision.

## **LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2.[1] The FAA provides that "any doubts concerning the scope of

---

[1]Section 3 of the FAA outlines the circumstances under which a court "shall" stay proceedings pending arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of

3

arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *United Steelworkers of Am. v. Warrior & Gulf Navigation*, 363 U.S. 574, 584–85 (1960). "The standard for demonstrating arbitrability is not high. The Supreme Court has held that the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir.1999) (citing *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985)). Indeed, the factual allegations need only "'touch matters' covered by the contract containing the arbitration clause" for arbitration to be triggered. *Id*. (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n. 13 (1985)).

In deciding whether to compel arbitration, the court may not review the merits of the underlying dispute. Instead, the court must examine whether:

---

> one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

(1) there exists a valid agreement to arbitrate; (2) the parties' dispute falls within their arbitration agreement; and (3) there exists "a defense that would be available to a party seeking to avoid the enforcement of any contract." *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir.2005); *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir.1991); *see also Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008) ("[T]he court must determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." (citation and quotation signals omitted)).

## **DISCUSSION**

**I.     iStar May Invoke the Arbitration Clause of the Agreement, Notwithstanding its Non-Signatory Status.**

The parties do not dispute the validity of the Agreement, nor do they dispute the presence of a binding arbitration clause within the Agreement:

> Any controversy between the parties regarding the construction or application of any term or provision hereof, or the performance of any services under this Agreement, and any claim arising out of or relating to this Agreement or its breach, shall be submitted to arbitration to be held in Honolulu, Hawaii upon the written request of one party after the service of that request on the other party. The arbitration shall be conducted in accordance with the **Rules, Procedures, and Protocols for Arbitration of Disputes** of Dispute Prevention & Resolution, Inc. ('DPR') as modified herein.

Dookchitra Decl., Ex. A [Agreement] § 7.14.1, ECF No. 13-1 at 20.

The only point of contention is whether iStar, a non-signatory to the Agreement, may invoke the arbitration provision to compel WDCD to proceed to arbitration on the commissions claims that are unquestionably founded on the Agreement.

The Hawai`i Supreme Court, in *Luke v. Gentry Realty, Ltd*, 96 P.3d 261 (Hawai'i 2004), has held that a non-signatory to an arbitration agreement has standing to invoke the arbitration agreement against a signatory if either one of the following two conditions is met:[2]

> First, when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.
>
> Second, when the signatory to the contract containing a[n] arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

*Luke*, 96 P.3d at 268 (citing *Westmoreland v. Sadoux*, 299 F.3d 462, 467 (5th Cir. 2002)) (formatting altered).

Under the first condition, "[a] signatory to an arbitration agreement is estopped from refusing to arbitrate claims against a nonsignatory when the signatory's claims are intertwined with, rather than independent of, the agreement containing the arbitration clause." *Luke*, 96 P.3d at 268. "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we

---

[2]The parties agree that state law controls the question of who may avail itself of a contractual arbitration clause, though they disagree on which state law governs. *See* Mot. to Stay at 10; Mem. in Opp'n at 15–17.

focus on the factual allegations in the complaint rather than the legal causes of action asserted," and "[i]f the allegations underlying the claims 'touch matters' covered by the parties' [contract], then those claims must be arbitrated [in accordance with the contract], whatever the legal labels attached to them." *Genesco, Inc. v. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) (citing *Mitsubishi Motors*, 473 U.S. at 622 n.9, 624 n.13).

Here, WDCD alleges six causes of action:

1. Unfair methods of competition arising in part out of iStar's treatment of itself as separate as distinct from the SFI Parties and for its alleged refusal to subject itself to arbitration under the Agreement (Compl. ¶¶ 151–66, ECF No. 1 at 68–80);

2. Negligent misrepresentation and non-disclosure of material facts for iStar's alleged failure to notify WDCD "that it, and not [the] SFI Parties themselves . . . controlled [the] SFI Parties' performance under the Development Agreement, including but not limited to whether or not [WDCD] would receive its bargained for compensation" (Compl. ¶¶ 167–78);

3. Fraud in "depriv[ing WDCD] of its rights and interests in and to the Project and the profits and revenues generated therefrom" (Compl. ¶¶ 179–81);

7

4. Unjust enrichment by illegally competing with WDCD "for the profits from the Project" (Compl. ¶¶ 182–85);

5. Interference with economic advantage arising out of iStar's alleged interference with WDCD's business relationship with the SFI Parties under the Agreement by, among other things, acting "to induce [WDCD] to believe that [it] was entitled to the Sales Override Fees and Profit Participation from the entire Project" (Compl. ¶¶ 186–95); and

6. For "an accounting to determine the total sales, revenues, costs and profits from the Project that may have been or may be received by [the] SFI Parties or iStar in order to determine the full value of its interest in and to the Project and the proceeds generated therefrom" (Compl. ¶¶ 196–97).

Each of these claims against iStar not only "touches" on the Agreement but, by reference to the Project that the Agreement was designed to implement, and the relationship between the SFI Parties and WDCD under the Agreement, necessarily *relies* on the Agreement. *See Simula*, 175 F.3d at 721 (citations omitted); *Chloe Z Fishing Co., Inc. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1256–58 (S.D. Cal. 2000) (concluding that each of the plaintiff's claims—including for breach of implied covenant of good faith and fair dealing, for unfair business

practices, and for intentional interference with contractual relations, among others—"either specifically references the interpretation of the [agreement] or implicitly charges that defendants' have not performed their obligations in light of the coverage provided to plaintiffs in the [agreement]" (internal record citations omitted)). Moreover, as iStar points out, the June 26, 2017 Complaint "references the Agreement by name forty-seven times; and each claim is expressly dependent upon it and incorporates it by reference." Mot. to Stay at 14. As such, it cannot be said that "the claim(s) against the nonsignatory [(iStar)] are independent of the agreement in which the arbitration clause appears." *Luke*, 96 P.3d at 268 (footnote omitted) (citing *Westmoreland*, 299 F.3d at 467; *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 747–78 (9th Cir. 1993)).

The Court holds that a valid written agreement exists that unambiguously evinces an intent to arbitrate disputes founded on the Agreement. The Court further holds that non-signatory iStar has standing to enforce the Agreement and invoke the arbitration clause against signatory WDCD under Hawaii law. *See Luke*, 96 P.3d at 268.

## II. The Agreement Encompasses the Claims at Issue.

In construing the terms of an arbitration provision, courts "appl[y] general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of

9

arbitration in favor of arbitration." *Lexington Ins. Co. v. Centex Homes*, 795 F. Supp. 2d 1084, 1089 (D. Haw. 2011) (citing *Mastrobuono*, 514 U.S. at 62; *United Steelworkers of Am.*, 363 U.S. at 584–85). This standard requires courts to compel arbitration "'unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (quoting *United Steelworkers of Am.*, 363 U.S. at 582–83); *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 860 (9th Cir. 1979).

Here, Section 7.14.1 of the Agreement states that "any claim arising out of or relating to this Agreement or its breach, shall be submitted to arbitration to be held in Honolulu, Hawaii upon the written request of one party after the service of that request on the other party." Dookchitra Decl., Ex. A [Agreement], ECF No. 13-1 at 20. In this Circuit, where "arising out of or relating to" language is present in an arbitration provision, a claim "need only touch matters covered by the contract, in order for the court to resolve all doubts in favor of arbitration." *Simula*, 175 F.3d at 721 (citing *Mitsubishi*, 473 U.S. at 624 n.13); *Genesco*, 815 F.2d at 846; *J.J. Ryan & Sons v. Phone Poulenc Textile, S.A.*, 863 F.2d 315, 319 (4th Cir. 1988)). As discussed above, WDCD's claims against iStar not only "touch" but rely on the Agreement as the foundation for WDCD's asserted entitlement to additional compensation. No party, including WDCD, suggests

otherwise. Thus, WDCD's claims fall within the scope of the Agreement's arbitration provision. *See Brown*, 430 F.3d at 1010.

## III. WDCD Presents No Meritorious Contract Defenses

The gravamen of WDCD's opposition to iStar's Motion to Stay is that iStar has refused to arbitrate, and that as a non-signatory to the Agreement, iStar may not invoke FAA § 3 to stay the case. The former contention is moot,[3] and the latter fails under the rule set forth in *Luke*, 96 P.3d at 268, as discussed above.[4] WDCD's remaining "unfairness" defense is equally unavailing.

WDCD asserts two principal forms of perceived "unfairness." First, it characterizes itself as a "small, privately held local company" being forced "to conduct multiple, expensive and time-consuming proceedings in multiple forums with multiple parties with the endgame that WDCD will never survive" to see its claims adjudicated on the merits. Mem. in Opp'n at 21–22, ECF No. 22. Second, WDCD suggests that, if compelled to arbitrate, the DPR discovery rules applicable to arbitration somehow place WDCD at a disadvantage. *See e.g.*, Mem. in Opp'n at 3 ("If a Stay is granted, Plaintiff submits that this Court must order arbitration of

---

[3] iStar's September 19, 2017 Arbitration Demand belies any notion that iStar has denied its obligation or willingness to arbitrate WDCD's claims against it.

[4] A "litigant who was not a party to the relevant arbitration agreement may invoke [FAA] § 3 if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). Here, the Hawaii Supreme Court's decision in *Luke*, 96 P.3d at 268, *is* "the relevant state contract law" that establishes when non-signatories may enforce an arbitration agreement. To the extent either party contends otherwise (*see e.g.* Mem. in Opp'n at 17–20), that contention is misplaced.

11

its claims against iStar . . . without limitation on metadata discovery" (citations omitted).

Without more, "unfairness" is no reason to abrogate an otherwise valid contract. *See, e.g.*, *Chloe Z Fishing Co.*, 109 F. Supp. 2d at 1258 (stating that potential unfairness of the arbitration proceeding is irrelevant to determining the arbitrability of the dispute and only comes into play, if at all, upon enforcement) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). Moreover, the unfairness described by WDCD is not apparent. No one is forcing WDCD to simultaneously litigate on multiple fronts in an effort to exhaust its limited resources. In fact, arbitration is generally sought as an expeditious way of reaching the merits of a dispute without the expenditure of significant litigation costs common to federal court. The Court sees no reason why that would not be the case here. And the Court's order herein staying the instant action is designed, in part, to avoid the parable of horrors—in the form of multiple litigation fronts—hypothesized by WDCD. Similarly, there is nothing inherently unfair about the DPR discovery rules applicable to arbitration. Rules 19 and 20, for instance, afford the arbitrator great latitude in fashioning a discovery plan that could very well be far less costly than the minimum discovery "guarantees" afforded by Fed.R.Civ.P. 30(a) and 33(a). Nor is it evident why the specific discovery provisions in the Agreement are any more onerous on WDCD than they would be

on iStar, given the reciprocal nature of the provisions. *See* Dookchitra Decl., Ex. A §§ 7.14.2 and 7.14.3.

In sum, WDCD has not raised any meritorious defenses or arguments that would provide a basis for this Court to conclude that the Agreement is unenforceable.

## IV. The Case is Stayed Pending Arbitration

The Court now must decide whether to stay the balance of the proceedings pending arbitration. Such a decision is "a matter largely within the district court's discretion to control its docket." *Genesco*, 815 F.2d at 856 (citing *Moses H. Cone*, 460 U.S. at 20 n. 23). The Court, in its discretion, determines that in light of the pending arbitration, the benefits of staying the instant case—primarily avoiding the potential for inconsistent rulings, promoting judicial economy, and conserving the parties' resources—outweigh any potential prejudice caused by a delay. *See generally Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see, e.g.*, *Chloe Z Fishing Co.*, 109 F. Supp. 2d at 1261 (staying case pending arbitration under the FAA (citations omitted)). In light of the propriety and anticipated duration of a stay, the Court further orders that the case be administratively closed.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS iStar's Motion to Stay this case, and directs the Clerk of Court to administratively close it. The

13

administrative closing of this case is solely an administrative matter and does not impact, in any manner, any party's rights or obligations, has no impact on any limitation period applicable to this case, does not alter in any manner any previous rulings by the court, and does not require a filing fee to reopen the case.

In addition, the parties are directed to notify the Court within 30 days after final resolution of the arbitration, with joint recommendations, if possible, regarding any further proceedings that may be necessary in this Court.

IT IS SO ORDERED.

DATED: November 16, 2017 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*WDCD, LLC, v. iStar, Inc.,* CIV. NO. 17-00301 DKW-RLP; **ORDER GRANTING iSTAR INC.'S MOTION TO STAY LITIGATION UNDER 9 U.S.C. § 3 OR, IN THE ALTERNATIVE, TO DISMISS UNDER RULES 8, 12(b)(6), AND 12(b)(7)**